UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| CHARTER SCHOOLS | ) | |
| DEVELOPMENT CORPORATION, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | 2:08 CV 99 |
| | ) | |
| CITY OF EAST CHICAGO | ) | |
| (Redevelopment Commission), *et al.*, | ) | |
|     Defendants. | ) | |

## MEMORANDUM and ORDER

Plaintiff Charter Schools Development Corporation ("Charter") brought this action seeking to quiet title to real estate it purports to own, and for damages based on theories of slander of title and inverse condemnation. Charter has moved for summary judgment, arguing that the undisputed facts allow only one conclusion: that it is the sole owner of the real estate in question, and holds clear title to it. The City of East Chicago ("East Chicago") opposes the motion. With the possibility of one exception, there appear to be no material facts in dispute. The court briefly summarizes only those facts which are pertinent to its decision, simplifying a few of the details.

In March 1995 East Chicago's Redevelopment Commission (hereinafter, "the EC Redevelopment Commission") acquired the real estate in question (hereinafter referred to as the "Columbus School Property") from The School City of East Chicago. On October 25, 1995, East Chicago's Redevelopment Commission adopted Resolution 1225, authorizing and directing that title to the Columbus School Property be transferred to an Indiana non-profit corporation, The Revitalization Organization of New Addition,

Inc. ("RONA"), pursuant to Ind. Code § 36-7-14-22.1 (hereinafter, "the Redevelopment Statute").[1]

The Redevelopment Statute then allowed (as the version currently in effect does) municipal redevelopment commissions to transfer property, at no cost, to a "community development corporation" (RONA met the statutory definition of that term) if certain requirements were met. Among those requirements, the community development corporation had to agree to "cause development" on the property, within five years, that would serve or benefit low-to-moderate income families, and agree to use lower-income residents as trainees and employees and contract with locally-owned businesses in undertaking work in connection with the property. Ind. Code § 36-7-14-22.1 (b)(2)-(3). Resolution 1225, adopted by the EC Redevelopment Commission, recited that RONA had agreed to these (and other) statutory requirements, and authorized transfer of the Columbus School Property to RONA "for the purpose of providing low or moderate income housing or other development that will benefit or serve low or moderate income families within the geographic area in which the subject real estate is located." (DE # 42-4 at 2). The resolution authorized the president or vice-president of the EC Redevelopment Commission to deliver a "Quit Claim Deed" to RONA. *Id*.

That did not happen in a timely fashion. On August 25, 2003, the EC Redevelopment Commission adopted Resolution 1288, stating that because of

---

[1] The Redevelopment Statute was repealed effective July 21, 2001. It was replaced by Ind. Code § 36-7-14-22.2, which is substantially identical.

inadvertence, the quitclaim deed authorized by Resolution 1225 had never been executed and delivered. (DE # 42-8 at 1.) Therefore, in order that the transfer of the Columbus School Property to RONA authorized by Resolution 1225 could "be completed," Resolution 1288 "confirm[ed] and ratifie[d]" Resolution 1225, and authorized the current president or vice-president of the EC Redevelopment Commission to execute and deliver a quitclaim deed to RONA. *Id*. Resolution 1288 appears to have been an after-the-fact ratification in more ways than one, because a quitclaim deed dated May 21, 2003, conveying the property to RONA, was recorded on August 8, 2003. (DE # 42-7.) That deed states that RONA is a "qualified corporation" under Ind. Code § 36-7-14-22.1, and that the conveyance was made pursuant to Resolution 1225 adopted by the EC Development Commission on October 25, 1995. *Id*.

On December 20, 2006, RONA conveyed the Columbus School Property, by warranty deed, to plaintiff Charter in exchange for stated consideration of $1.00. (DE # 24-2 at 4.) Whether that conveyance transferred title to Charter is the bone of contention in the present suit. Charter attempted to build a charter school on the property, to benefit low-to-moderate income families in the geographic area. On February 6, 2007, Charter entered into a lease, with option to purchase, with the Lighthouse Academies[2] of Indiana, Inc., ("Lighthouse") an organization which was to operate the school with the option to purchase it for $188,600. (DE # 24-3 at 4; DE # 24-2

---

[2] Charter also refers to this organization as "Lighthouse Academics." (DE # 44 at 2, ¶ 1.) The proper name of the organization, which is not a party to this suit, is unknown.

3

at 6 ¶ 10; DE # 24-2 at 8.) When Charter attempted to obtain the necessary permits to begin construction of the school, trouble began. At a meeting of the East Chicago Plan Commission on July 9, 2007, the City's attorney raised issues regarding ownership of the Columbus School Property, and no action was taken to permit construction. (DE # 44-4 at 1.) East Chicago's position, as outlined in its answer to the complaint filed in this action, is that RONA had never obtained title to the Columbus School Property, and so had no title to convey to Charter. Charter alleges that East Chicago's actions have caused Charter's deal with Lighthouse to destruct.

In its motion for summary judgment, Charter argues simply that the facts above show that Rona acquired good title from East Chicago, and conveyed good title to Charter, making East Chicago's position groundless and tortious. East Chicago's argument in opposition proceeds in three steps.

First, Indiana allows property deeds to contain conditions precedent, and title does not pass until those conditions are performed and met. *See Robinson v. Railing*, 162 Ind. App. 142, 144, 318 N.E.2d 373, 374 (1974). East Chicago asserts that the requirements imposed by the Redevelopment Statute, including the requirement that RONA to "cause development" of the property to benefit local residents of low-to-moderate income within five years, were (and remain) conditions precedent to the transfer of title.

Second, East Chicago acknowledges that those conditions are not apparent on the face of the deed, and so were not recorded, and that there are no known decisions

4

interpreting the Redevelopment Statute in this regard; that is, whether this omission affects the validity of a transfer of the property to a subsequent purchaser. Nevertheless, by way of comparison to Indiana case law interpreting Indiana's statutory scheme for Planned Unit Developments, East Chicago argues that Charter was on notice of the Development Statute, Ind. Code § 36-7-14-22.1. In addition, the quitclaim deed from East Chicago to RONA stated that it was pursuant to Resolution 1225, which specifically stated that RONA agreed to the terms of the Development Statute; and because that resolution was a matter of public record, the conditions therein may be enforced against subsequent purchasers. *Cf. Story Bed & Breakfast, LLP v. Brown County Area Planning Com'n*, 819 N.E.2d 55, 65 (Ind. 2004).

Third, East Chicago argues that RONA has never "caused development" of the Columbus School Property to benefit local low and moderate income families, within five years or otherwise, and so the conditions precedent to complete transfer of title to RONA were never fulfilled. Thus, RONA never acquired title, and RONA could not convey to Charter what RONA itself did not have.

In its reply memorandum, Charter makes two arguments, one substantial, and one in three brief paragraphs as an alternative. Taking that alternative argument first, Charter asserts that when East Chicago executed and delivered the quitclaim deed to RONA, it "did not set forth any reversionary or remainder interests," (DE # 44 at 9), therefore the deed passed whatever interest East Chicago had to RONA, Charter has clear title and East Chicago can assert no interest.

5

The court rejects this alternative argument. The deed recited that the conveyance was made pursuant to EC Development Commission Resolution 1225. Under the reasoning employed in *Story Bed & Breakfast, LLP*, this was sufficient to put Charter on notice of the conditions attached to the transfer of the property to RONA. Therefore, if those conditions have not been met, East Chicago may enforce them. *Story Bed & Breakfast, LLP*, 819 N.E.2d at 64-65.

Charter's principal argument is that under Indiana law, conveyance of real property does not occur until execution and delivery of a deed, as East Chicago has admitted. East Chicago stated in its response to Charter's motion that "[o]n May 21, 2003, The City of East Chicago Department of Redevelopment . . . transferred title to the Columbus School Site to RONA pursuant to Resolution No. 1225," citing the quitclaim deed. (DE # 42 at 4, ¶ 8.) Thus, Charter asserts—and the court agrees—that RONA had five years from May 21, 2003, to "cause development" as necessary to satisfy the condition precedent created by the Development Statute.

Next, Charter argues that "cause" is defined by *Black's Law Dictionary* to mean something that "precedes and brings about an effect or result," (DE # 44 at 7), and so RONA's "significant preparation of development of the land satisfies the [Development] statute." *Id*. According to Charter, the "substantial steps" (DE # 44 at 8) that RONA took to "cause development" of the property began with RONA first starting talks with Lighthouse in 2005 about the possibility of building a charter school on the property. In late 2005, RONA's board of directors voted to entertain the

6

possibility of selling the property to Lighthouse, and had the property appraised. Lighthouse then began talking to Charter about developing the property for Lighthouse's use, and during 2006 Lighthouse had multiple meetings with East Chicago officials and planning committees, which included presenting architectural drawings of the proposed school. The State of Indiana approved the plans for the school, and, in December 2006, RONA conveyed the property to Charter.[3] East Chicago then began raising the issues regarding title to the land that culminated in the present lawsuit.

Thus, Charter's argument is that RONA, by initiating the sale of the land to a Lighthouse-Charter joint venture, receives credit as the agent which caused the development of the property actually undertaken by Charter and Lighthouse. This is a "but for" cause argument. Perhaps the Indiana Development Statute should be interpreted as requiring something more in the nature of a direct cause. In the court's view, this difficult question of statutory interpretation should not be answered solely on the basis of one party's argument, which itself is based only on the *Black's* definition of

---

[3] Charter argues that Indiana approved the school plans prior to Charter's purchase (DE # 44 at 8, "School plans had been approved"), but this is not entirely clear from the evidence Charter provides. In his deposition, Lighthouse's CEO, Michael Ronan, stated that the "first time the issue of whether RONA had the right to sell the land . . was raised by the city after . . .what I thought was approval of the planning commission to proceed with the only condition that I remember them stating was state approval of the plans, which we subsequently received." (DE # 44-3 at 7.) It is not clear whether by "subsequently" Ronan means that the approval came after the planning commission's approval, or after the closing of the sale.

the word cause. Further briefing on this issue by both parties[4] would be helpful, including consideration of whether the question should be certified to the Indiana Supreme Court.

Moreover, even if Charter's interpretation of "cause development" is accepted, it appears that there may be a question of fact, requiring jury resolution, whether RONA should be credited for causing any development. As evidence of the undisputed fact that RONA initiated development when it "first started talking to [Lighthouse] in 2005, regarding the possibility of building a charter school on the property," (DE # 44 at 2, ¶ 1), Charter cites the deposition (DE # 42-6) of RONA's president, Scott Upshaw, at page 39.

Viewing this evidence in the light most favorable to non-movant East Chicago, Upshaw's testimony can easily be interpreted differently. On page 39 of his deposition, Upshaw is describing a *second* set of discussions between RONA and Charter, initiated by Charter in late 2005, in which Charter was "inquiring were we [RONA] willing to sell the property for the development of a charter school." (DE # 42-6 at 8.) But Upshaw also stated that the initial idea to sell the Columbus School Property had germinated

---

[4] Because Charter's argument that RONA "caused development" within five years as required by the Development Statute is made for the first time in its reply memorandum, East Chicago has not had the opportunity to address it. Although arguments made for the first time in a reply brief are normally considered waived, *Holman v. Indiana*, 211 F.3d 399, 405 n. 5 (7th Cir. 2000), that is not the situation here, where Charter is responding to East Chicago's argument that RONA did not "cause development" as required by the statute. *See Eagle Servs. Corp v. H2O Indus. Servs., Inc.*, 2005 WL 1429279 (N.D. Ind. 2005).

8

earlier in 2005 as part of RONA's board of directors' consideration of the "general topic on how we could get out of the financial difficulties we were in." (DE # 42-6 at 6.) Upshaw explained further that although RONA had initially planned to develop the property (and other property) itself, its financial problems presented "extenuating circumstances that wouldn't allow RONA to do any development, and subsequently now we're – still to this day haven't done any development." (DE # 42-6 at 5.) The other properties owned by RONA were put up for tax sale. (*Id.*) Thus, an alternative view of the facts is that rather than "causing development" of the Columbus School Property, RONA simply sold it because it needed cash quickly.[5]

For the foregoing reasons, Charter's motion for summary judgment (DE # 24, including the supplemental motion, DE # 25) is **DENIED**. In a separate order, to be issued promptly, the court will set a deadline for the filing of any final dispositive motions, and a date for trial.

**SO ORDERED.**

Date: September 29, 2010

 s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

---

[5] As noted previously, however, the quitclaim deed conveying the property from RONA to Charter recites consideration of $1.00. (DE # 24-2 at 4.) If this in fact is the only consideration Charter furnished, it is unclear how this would have helped RONA surmount its financial difficulties.